UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ARTHUR LEE BUSTAMANTE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 1:12CV152 CDP |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This case is before the Court on movant's petition for a writ of error coram nobis pursuant to 28 U.S.C. § 1651(a).  Petitioner, Arthur Lee Bustamante, also known as Napoleon Arturo Bustamante[1] was convicted by a jury of one count of uttering a forged and counterfeit security, one count of impersonating a United States citizen, and one count of making a false statement of U.S. birth to a federal agency.  Criminal Case No. 1:05CR131 CDP.  He was sentenced to 21 months imprisonment and a two-year term of supervised release.  Bustamante alleges that because of these convictions he is precluded from contesting his alienage in his pending deportation proceeding.  As grounds for his petition, Bustamante raises one claim for relief:  the admission of evidence that was held in a different case to have violated his rights under the Confrontation Clause.  Because I

---

[1] Petitioner was charged in his underlying criminal case as Napoleon Arturo Bustamante.  In various pleadings in his criminal and § 2255 cases, he denies using this name, and he has alternatively used the names Arthur Lee Bustamante and King Arthur XII.  For clarity of the record, I will refer to him as "Bustamante" in this Order.

have determined that the admission of the evidence constituted harmless error, I will deny his petition for the writ.

## Background

In 2005, Bustamante was arrested for uttering a forged and counterfeit security, namely a check for $148,974.86 from an organization called ST&P Communications. After his arrest, he was interviewed by an agent with the Bureau of Immigration and Customs Enforcement (ICE), and he stated that he was a United States citizen by birth. ICE's subsequent investigation indicated that Bustamante was actually born in the Philippines to Filipino parents, and he had never applied for or received U.S. citizenship. These actions formed the basis for Counts I, III, and IV of his indictment.[2]

At trial, the government called ten witnesses and introduced numerous documentary exhibits to support the charges against Bustamante. Among those documents used to establish that Bustamante was born in the Philippines were two documents that were purportedly Filipino birth certificates. Although Bustamante initially indicated that he would testify in his defense, he decided not to testify during trial, and he did not present any other witnesses in his defense.

The jury found Bustamante guilty on Counts I, III, and IV of the indictment. I sentenced him to 21 months imprisonment and two years of supervised release. The

---

[2] Count II charged Bustamante with impersonating an undercover federal agent, which was based on his alleged statement to an employee of the bank where he presented the fraudulent check that he was an undercover Secret Service agent involved in a sting operation. That count was dismissed, however, before the case was sent to the jury.

Eighth Circuit affirmed Bustamante's convictions and sentence. *United States v. Bustamante*, 248 F. App'x 763 (8th Cir. 2007) (per curiam). On January 11, 2010, Bustamante filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Case No. 1:10CV13 CDP. He raised claims of actual innocence and mistaken identity, ineffective assistance of counsel, and judicial and prosecutorial misconduct. I denied the motion without an evidentiary hearing on June 30, 2011.

When Bustamante's prison term ended around October 2006, he was placed into removal proceedings and was deported to the Philippines on April 8, 2008. A few months later, he obtained a United States passport from the U.S. Embassy in Manila, using photocopies of his old passport, a social security card, and a Department of Veterans Affairs identification card. He received a passport and returned to the United States. He then applied for Supplemental Security Income benefits, stating that he was a United States citizen and using his passport and a delayed registration of birth document to support his application. He was arrested and charged in the Central District of California with illegal reentry, making a false statement in a passport application, and making a false statement in an application for social security benefits. At his trial, the government introduced evidence of his convictions in this court, as well as one of the purported Filipino birth certificates, as evidence of his knowledge that he was not a United States citizen. He was convicted on all three charges.

Bustamante filed a direct appeal, and the Ninth Circuit Court of Appeals vacated his convictions. *United States v. Bustamante*, 687 F.3d 1190 (9th Cir. 2012). The Ninth Circuit held that the admission of the purported Filipino birth certificate violated Bustamante's constitutional right under the Confrontation Clause, and the error was not harmless. *Id.* at 1191. The Ninth Circuit explained that the "copy" of the birth certificate was not actually a copy of such a record, but rather a transcription prepared in 1975 of information said to be contained in a 1939 birth record kept in the city of Bacolod. *Id.* at 1192. Furthermore, the government turned over evidence prior to trial that the City of Bacolod no longer had any birth records for that time period, or any original documents to verify the information in the document presented at trial. *Id.* at 1192. Because it was created for the purpose of an earlier investigation into Bustamante's citizenship by the United States Air Force and under circumstances that would lead an objective witness to believe it would be available for use at a later trial, the Ninth Circuit held that this document was testimonial. *Id*. at 1194. Because Bustamante did not have an opportunity to confront the declarant, the admission of this document violated his Confrontation Clause rights, and the error was not harmless. *Id.* at 1194-95. The Court therefore vacated the California conviction.

Bustamante filed this motion for writ of error coram nobis pursuant to 28 U.S.C. § 1651(a) on September 11, 2012, seeking to vacate his earlier convictions in this court for impersonating a U.S. citizen and making a false statement of citizenship. He claims that

he is estopped from challenging the question of his alienage in pending deportation proceedings because of these convictions.

## Discussion

Petitioner requests a writ of error coram nobis pursuant to 28 U.S.C. § 1651, the All Writs Act, which is "a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (citation and internal quotation marks omitted). It is "traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." *Id.* (citing *United States v. Mayer*, 235 U.S. 55, 67-68 (1914)). Thus, it is an "extraordinary writ" reserved to "errors of the most fundamental character." *United States v. Morgan*, 346 U.S. 502, 512 (1954) (citation and internal quotation marks omitted).

The only ground supporting Bustamante's petition is a Confrontation Clause challenge concerning the admission of the purported Filipino birth certificates. Both documents, Trial Exhibits 19 and 20, show that a child named Napoleon Bustamante was born to Isabelo Bustamante and Presentacion Lim on February 1, 1939, in the City of Bacolod. Exhibit 19 was issued on January 31, 1974, and signed by Joseph A. Moreno,

the Assistant Local Civil Registrar.  Exhibit 20 was dated October 14, 1975, and it was signed by Chief Civil Registrar Demetrio B. Salupisa.[3]

The Sixth Amendment provides that "[i]in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Supreme Court has interpreted this constitutional provision to prevent the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  The *Crawford* Court provided examples of "testimonial" statements as including "material such as affidavits, custodial examinations, [and] prior testimony that the defendant was unable to cross-examine"; "statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and "statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial."  *Crawford*, 541 U.S. at 51-52 (internal citations omitted).

As summarized by the Ninth Circuit in Bustamante's appeal to that court, the Supreme Court has also analyzed documents comparable to the "birth certificates" used in this case:  "certificates of analysis" containing forensic test results, which the Supreme Court held to be testimonial statements under *Crawford* of the analysts who completed

---

[3] Exhibit 20 in his underlying criminal trial was the same exhibit later admitted in his California trial.

the certificates.  *Bustamante*, 687 F.3d at 1193 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).  The Ninth Circuit summarized the Supreme Court's holding in *Melendez-Diaz* as follows:

> In determining that the certificates of analysis were testimonial, the Court emphasized that they were "incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact"; that they were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination"; and that they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Bustamante*, 687 F.3d at 1193 (quoting *Melendez-Diaz*, 557 U.S. at 310-11) (internal quotation marks and citations omitted).  Furthermore, the *Melendez-Diaz* Court explained that the certificates of analysis could not qualify as ordinary, non-testimonial business records.  It explained:  "A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here:  *create* a record for the sole purpose of providing evidence against a defendant."  *Melendez-Diaz*, 557 U.S. at 322-23.

Based on the Confrontation Clause principles set forth by the Supreme Court, I agree with the holding of the Ninth Circuit that the admission of the "birth certificates" against Bustamante in his underlying trial violated his confrontation rights.  The Ninth Circuit explained:

> In essence, Exhibit 1 is an affidavit testifying to the contents of the birth records of the City of Bacolod and is "functionally identical to [the] live, in-court testimony" that an employee of the Civil Registrar's office might have provided.  It was also created for the purpose of the Air Force investigation

- 7 -

> into Bustamante's citizenship and was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." The admission of Exhibit 1 therefore violated Bustamante's confrontation rights because Bustamante did not have a prior opportunity to examine Salupisa.

*Bustamante*, 687 F.3d at 1194. I agree with this reasoning, and I conclude that the same analysis applies to Exhibit 19 because Bustamante did not have a prior opportunity to examine Moreno, the person who issued that document. Therefore, I conclude that the admission of Exhibits 19 and 20 at Bustamante's trial in this court violated his rights under the Confrontation Clause of the Sixth Amendment.[4]

This does not end the inquiry, however. The Supreme Court has stated that even where there is constitutional error under the Confrontation Clause, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."

---

[4] The government argues that these documents should be deemed admissible under the hearsay exceptions for birth certificates under Federal Rule of Evidence 803(9) or ancient documents under Rule 803(16). These documents would not qualify as birth certificates under Rule 803(9) because they are not actual birth records, but rather transcriptions of records. Further, although the documents themselves may be admissible as ancient documents because they were more than 20 years old and found in a place where they would be found if authentic – namely, in the investigatory files of the INS and the Air Force – they would still be inadmissible under *Crawford*. Even if the physical documents themselves are admissible under a hearsay exception, their contents constitute testimonial statements, as discussed above. Therefore, their admission at trial was erroneous.

Similarly, the government argues that admission of these documents would only constitute evidentiary error, which will not support issuance of a writ of error coram nobis. However, because I have determined that the error was actually a constitutional error that resulted in the deprivation of Bustamante's confrontation rights under the Sixth Amendment, this argument by the government also fails.

The government finally argues that because a claim of evidentiary error or a Confrontation Clause violation can be raised on direct appeal, it is not appropriate in a petition for writ of error coram nobis. However, because Bustamante cites ineffective assistance of counsel as the cause for his failure to raise these claims on direct appeal, I will consider them on their merits.

*Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  The burden is on the "beneficiary of [the] constitutional error," here the government, "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967).  Factors to consider when deciding whether such an error is harmless include the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

Based on all of the evidence presented at trial to demonstrate Bustamante's alienage, I conclude that the government has met its burden of proving that admission of these exhibits constituted harmless error beyond a reasonable doubt.[5]  In addition to the purported birth certificates, Exhibits 19 and 20, the government presented significant evidence to prove that Bustamante was born in the Philippines and was not a United States citizen.

The government introduced birth certificates for each of Bustamante's two children, Agnes Bustamante and Kim Bustamante, found in his home during the execution of the search warrant.  There were two birth certificates for each of his daughters:  one stated that the father was Arturo Lim Bustamante, a Filipino citizen, and

---

[5] This conclusion is consistent with the dissent of Judge Mendez in the Ninth Circuit's opinion.  *See United States v. Bustamante*, 687 F.3d 1190, 1196 (9th Cir. 2012) (Mendez, J., dissenting).

the mother was Cornelia San Luis Fernando; the other stated that the father was Arthur L. Bustamante, an American citizen, and the mother was Nenita Fernando. However, even the birth certificates stating that he was an American citizen showed that he was born in the Philippines. Further, in Agnes's own INS file, she reported that her father was Arturo Lim Bustamante, a citizen of the Philippines. The birth certificate contained in that INS file for Agnes matched the birth certificate in Bustamante's home showing that her father was Filipino.

The government also introduced a Visa Application for Bustamante, issued on February 26, 1970, which stated that he was a citizen of the Philippines born on February 1, 1939, in Bacolod City. It contained Bustamante's own statement that he had lived in the Philippines "since birth," and the photo on the Visa Application matched the defendant. Additionally, the government introduced a marriage contract found in Bustamante's home, stating that Arturo L. Bustamante married Cornelia Fernando in the Philippines, and that both Arturo and Cornelia were Filipino. Bustamante's parents were listed as Isabelo Bustamante and Presentacion Lim, who were also Filipino. These same parents were listed on Bustamante's social security records, even though those records indicated a birthplace of California.

The government presented testimony from Lucho Bustamante, who stated that he was petitioner Bustamante's nephew. He corroborated the identities of petitioner Bustamante's family members as shown on the various documents presented by the

government.[6] For example, he testified that petitioner Bustamante was his father's brother, and he was married to a Filipino woman named Cornelia. He has two daughters named Agnes and Kim, and his parents were Isabelo Bustamante and Presentacion Lim. Lucho also stated that he originally met Arthur Bustamante in the Philippines. The government also introduced an appointment book found at Bustamante's house, with the name "Napoleon Arturo Bustamante" covered up, which showed numerous references to these same Filipino family members.

In summary, much of this evidence presented by the government explicitly shows that Bustamante was born in the Philippines. For those documents that show a birth place other than the Philippines, the inconsistency between those documents and the presence of multiple records greatly undermine their credibility and allow the inference that their contents are not accurate.

Furthermore, the only evidence of Bustamante's birth in the United States was a Delayed Registration of Birth for Arthur Lee Bustamante, issued by the State of California. It stated that he was born on February 1, 1945, and it was supported by a Certificate of Baptism from the Holman United Methodist Church, dated January 10, 1946. The government presented testimony that this church has only operated since 1947, and it only purchased the property allegedly used for the baptism in 1957. The

---

[6] The government also introduced an application for a passport for King Arthur XIII, found in the petitioner's home, that listed Lucho Bustamante as the emergency contact person, further corroborating the relationship between petitioner Bustamante and Lucho Bustamante.

building was not even completed until 1959. Furthermore, the Immigration Agent who made contact with this church obtained the actual certificate of baptism for Arthur Lee Bustamante from that church, which was notarized in 1972 and reflected that the baptism did not occur until 1971. Therefore, a jury would necessarily draw the conclusion that this certificate – the only piece of direct evidence supporting Bustamante's claim that he was born in California – was fraudulent, and therefore could not support his claim of United States citizenship.

For the above reasons, I conclude that the admission of Exhibits 19 and 20 in Bustamante's trial was harmless error beyond a reasonable doubt. The overall strength of the prosecution's case was high, and the evidence presented to support Bustamante's birth in the Philippines was overwhelming. Therefore, because I find that the error was harmless, I will not issue a writ of error coram nobis.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Arthur Lee Bustamante, also known as Napoleon Arturo Bustamante, for writ of error coram nobis [#1] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2013.